**COUNTY OF WARREN,**
**Plaintiff/Respondent,**

v.

**UNION ELECTRIC COMPANY,**
**Defendant/Appellant.**

No. 58396.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 26, 1990.

Joseph H. Raybuck, St. Louis, for defendant/appellant.

Timothy Michael Joyce, Warrenton, for plaintiff/respondent.

CRANE, Judge.

Defendant Union Electric Company [UE] appeals from the judgment of the Circuit Court of Montgomery County, granting declaratory relief in favor of plaintiff, the County of Warren [the county]. The court construed the provisions of § 260.805 RSMo 1986 (An Act Relating to Waste to Energy Facilities) and decreed that that statute required an electrical supplier to purchase electricity from a governing body's waste to energy plant at the actual amount it bills the governing body less unretained taxes imposed by the governing body. We affirm.

The facts are undisputed. The county seeks to own and operate a waste to energy facility because its only landfill is nearly full. This facility would burn solid waste gathered primarily from the county. Section 260.805 RSMo 1986 requires the electrical supplier serving the area to enter into a long-term contract to purchase electricity from such a facility at the same rate the utility charges the county.

In November, 1987, the county wrote to UE pursuant to·§ 260.805 and requested it to enter into a long-term contract to purchase electricity from the proposed facility. The county asked UE to pay a rate of 8.65 cents per kilowatt hour based on what the county determined to be the rate UE charged the county. UE responded that it was willing to enter into a long-term contract, but only at a rate of 2 cents per kilowatt hour, which were its "avoided costs". "Avoided costs" are "the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source." 4 CSR 240–20.060(1)(A).

Section 260.805 reads as follows:

When any portion of a waste to energy facility is owned, operated or leased by a governing body, the electrical supplier serving the area shall be required to enter into long-term contracts to purchase the electricity generated by the waste to energy facility at the same rate the utility charges the governing body for energy used. Provided, however, that the rate paid by the electric supplier for such energy shall be such that no other customer class or classes shall ever directly or indirectly subsidize any part of the cost of owning, operating or maintaining the trash to energy facility, unless they receive a direct or indirect benefit.

Section 260.815 RSMo 1986 provides for the utility to bring a rate case before the Public Service Commission [PSC] if it experiences any loss of revenue. "The public service commission may consider any loss of revenue that may occur due to sections 260.800 to 260.815 and allow the electrical company to recover the same in a rate case before the Missouri public service commission."

The county filed a Complaint for Declaratory Judgment requesting the court to find in part that the language "... the same rate the utility charges the governing body for energy used" means 8.65 cents per kilowatt hour as between UE and the county. UE answered and filed a counterclaim seeking a declaratory judgment that under § 260.805 UE was required to pay no more than its "avoided costs" for the electricity it would purchase from the county.

Each party presented one witness at trial. The county's witness, Leonard Sutton, the Presiding Commissioner of Warren County, testified to the necessity for a plant and how the rate of 8.65 cents per kilowatt hour was determined. UE's witness, Richard Kovach, the Manager of the Rate Engineering Division at UE, testified that the average gross rate charged to the county was 6.62 cents per kilowatt hour. He further testified the UE's "avoided costs" were 1.5 cents per kilowatt hour.

On June 23, 1989, the trial court entered its Findings of Fact, Conclusions of Law and Order. As relevant to the issue raised by this appeal, the court declared that the first sentence of § 260.805, which requires the supplier to purchase the electricity generated by the facility at "the same rate the utility charges the governing body for energy used", means "the same price the utility charges the governing body and is

not limited to the utility's 'avoided cost'." The court further declared "price" to be the actual amount billed the governing body less unretained taxes imposed by the governing body. As part of its findings of fact the court found the purchase rate to be 6.62 cents per kilowatt hour.

UE appealed the trial court's decision to the Missouri Supreme Court which transferred the action to this court.

■ UE raises one point on appeal. It argues that the trial court erred in holding the statute required UE to pay an amount for electricity in excess of avoided costs because payment of such an amount would, it argues, necessarily result in one of three situations, all of which, it further argues, would be unlawful. Specifically, the point reads as follows:

THE TRIAL COURT ERRED IN APPLYING SECTION 260.805 RSMO. 1986 TO REQUIRE UNION ELECTRIC TO PURCHASE ELECTRICITY FROM WARREN COUNTY'S PROPOSED WASTE TO ENERGY FACILITY AT A RATE EXCEEDING UNION ELECTRIC'S "AVOIDED COSTS," BECAUSE THIS WOULD NECESSARILY RESULT IN ONE OF THREE SITUATIONS, ALL OF WHICH ARE UNLAWFUL:

(1) IF THE MISSOURI PUBLIC SERVICE COMMISSION DID NOT ALLOW UNION ELECTRIC TO RECOVER FROM ITS CUSTOMERS THE COSTS OF PURCHASING ELECTRICITY FROM WARREN COUNTY'S FACILITY, THEN UNION ELECTRIC'S STOCKHOLDERS WILL BE FORCED TO SUBSIDIZE THIS FACILITY, WHICH WOULD RESULT IN AN UNCONSTITUTIONAL TAKING OF PROPERTY WITHOUT DUE PROCESS, IN VIOLATION OF AMENDMENTS V AND XIV TO THE UNITED STATES CONSTITUTION AND OF ARTICLE 1, SECTIONS 10 AND 26 OF THE MISSOURI CONSTITUTION; OR

(2) IF THE COMMISSION ALLOWED UNION ELECTRIC TO RECOVER THESE COSTS FROM ALL OF ITS CUSTOMERS, THEY WILL BE FORCED TO SUBSIDIZE THIS FACILITY WITHOUT ALL BENEFITING FROM IT, IN VIOLATION OF THE ANTI-SUBSIDIZATION PROVISION OF SECTION 260.805; OR

(3) IF THE COMMISSION ALLOWED UNION ELECTRIC TO RECOVER THESE COSTS FROM ONLY THOSE OF ITS CUSTOMERS WHO WOULD BENEFIT FROM WARREN COUNTY'S FACILITY, UNION ELECTRIC AND SUCH CUSTOMERS WILL BE IMPROPERLY DISCRIMINATED AGAINST AS COMPARED TO RURAL ELECTRICAL COOPERATIVE CUSTOMERS IN AND AROUND WARREN COUNTY WHO WOULD NOT BE REQUIRED TO SUBSIDIZE THE FACILITY, AND THIS DISCRIMINATION WOULD BE IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF AMENDMENT XIV TO THE UNITED STATES CONSTITUTION AND OF ARTICLE 1, SECTION 2 OF THE MISSOURI CONSTITUTION.

■ These matters were raised as affirmative defenses in UE's answer and were alleged in UE's counterclaim on which the court found for the county. The error charged is based on alleged unlawful situations which could not possibly arise until after the PSC has taken action. In making a declaratory judgment, the court is limited to determining actual controversies. Declaratory judgments may not be used to adjudicate hypothetical or speculative situations which may never come to pass. *Commonwealth Insurance Agency, Inc. v. Arnold*, 389 S.W.2d 803, 806 (Mo.1965). *See Tintera v. Planned Industrial Expansion Authority*, 459 S.W.2d 356, 358 (Mo.1970) in which plaintiff taxpayer was prohibited from seeking a declaratory judgment on the legality of tax exemptions before the Board of Aldermen had approved any tax exemptions.

■ No action has been taken or even requested from the PSC. Until the PSC acts, the court has no jurisdiction to rule upon the legality of any rate it sets. "[M]atters within the jurisdiction of the commission must first be determined by it,

in every instance, before the courts will adjudge any phase of the controversy." *State ex rel. Cirese v. Ridge,* 345 Mo. 1096, 138 S.W.2d 1012, 1015 (en banc 1940). "Under the established system, the commission, in the first instance, passes upon all changes of rates made by public service corporations subject to a proper and well-regulated review by the courts, where and when all questions of law may be raised and determined." *Id.*

■ Exhaustion of administrative remedies is a jurisdictional requirement for a declaratory judgment action. *Bd. of Reg. for Healing Arts v. Hartenbach,* 768 S.W.2d 657, 659 (Mo.App.1989). This is true even if constitutional issues are raised. "[T]he existence of a constitutional issue does not obviate the exhaustion requirement because adherence to the administrative procedural 'chain allows for the orderly development of a clear factual record within which the legitimacy of the constitutional challenge can be more adequately assessed, rather than in a vacuum devoid of any factual context'." *Id.* (quoting from *Schierding v. Missouri Dental Board,* 705 S.W.2d 484, 487 (Mo.App.1985)).

UE's arguments, based on what the PSC may or may not do, are purely speculative. The facility has not yet been built. It is not known what rate UE will be charging the county at the time the facility is operational. It is not known if the rate will result in a loss of revenue to UE. It is not known how the PSC will handle any loss of revenue. There was no evidence that the PSC could only dispose of the potential UE application in one of three ways. Whether a rate set by the PSC may or may not result in an illegal subsidy or an unconstitutional taking cannot be determined until the PSC acts. There was no justiciable controversy relating to the validity of future PSC rates.

■ Determination of the issues raised in UE's point would have been inappropriate. We will not reverse a declaratory judgment on the basis of future hypothetical or speculative situations which are not

themselves ripe for judicial review. The judgment of the trial court is affirmed.

REINHARD, P.J., and STEPHAN, J., concur.